**ORAL ARGUMENT HAS NOT BEEN SCHEDULED**
**No. 12-1095**
**Consolidated with No. 12-1110 and No. 12-1157**
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

ELAINE JOAN MITTLEMAN,

Petitioner,

v.

POSTAL REGULATORY COMMISSION,

Respondent,

UNITED STATES POSTAL SERVICE,

Intervenor.

_____

ON PETITION FOR REVIEW FROM ORDERS OF THE
POSTAL REGULATORY COMMISSION
_____

BRIEF FOR PETITIONERS
_____

Elaine J. Mittleman, Esq.
Law Office of Elaine J. Mittleman
Attorney for Petitioners
2040 Arch Drive
Falls Church, VA  22043
(703) 734-0482

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.  Parties and Amici.

Petitioners in this matter are Elaine Mittleman in *Mittleman v. Postal Regulatory Commission*, No. 12-1095; Venice Stakeholders Association, Mark Ryavec, Greta Cobar, Jonathan Kaplan, Sue Kaplan, Jethro Pauker, James Smith, and Free Venice Beachhead newspaper in *Venice Stakeholders Association, et al., v. Postal Regulatory Commission*, No. 12-1110; and Paul McClung, Gary Walker, Angie Brown, Betty Puckett and Arlene Ingram in *McClung, et al., v. Postal Regulatory Commission*, No. 12-1157.

The Respondent in this matter is the Postal Regulatory Commission.

The Intervenor is the United States Postal Service.

### B.    Rulings Under Review.

The rulings under review are Order No. 1159, issued on January 20, 2012, of the Postal Regulatory Commission in Docket No. A2011-90, relating to the appeal of the final determination of the United States Postal Service concerning the Pimmit Branch Post Office in Falls Church, Virginia; Order No. 1166, issued on

i

January 24, 2012, of the Postal Regulatory Commission in Docket No. A2012-17,

relating to the appeal of the final decision of the United States Postal Service

concerning the Venice Post Office in Venice, California; and Order No. 1262,

issued on February 27, 2012, of the Postal Regulatory Commission in Docket No.

A2012-68, relating to the appeal of the final determination of the United States

Postal Service concerning the Spring Dale Post Office in Spring Dale, West

Virginia.

##### C.    Related cases.

These petitions have not previously been before this Court or any other

Court.  Counsel for petitioners is unaware of any related cases within the meaning

of D.C. Circuit Rule 28(a)(1)(c) pending in this Court or any other court.

                              Respectfully submitted,

                              /s/ Elaine J. Mittleman
                              Elaine J. Mittleman, Esq.
                              elainemittleman@msn.com
                              2040 Arch Drive
                              Falls Church, VA  22043
                              (703) 734-0482

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
 CASES……………………………………………………………………..i

TABLE OF AUTHORITIES……………………………………………….v

GLOSSARY……………………………………………………………..x

JURISDICTIONAL STATEMENT……………………………………..........1

STANDING………………………………………………………………...2

STATUTES AND REGULATIONS…………………………………………3

STATEMENT OF THE ISSUES………………………………………………..3

STATEMENT OF THE CASE…………………………………………………4

STATEMENT OF THE FACTS……………………………………………...6

I.      Appeals of Post Office Closings to the Postal Regulatory
        Commission………………………………………………………6

II.     United States Postal Service's Financial Situation…………………………7

III.    Specific Post Offices at Issue in this Appeal………………………………12

        A.      Pimmit Branch Post Office in Northern Virginia…………………...12

        B.      Venice, California, Main Post Office………………………………16

        C.      Spring Dale, West Virginia, Post Office……………………………23

SUMMARY OF ARGUMENT…………………………………………………...24

iii

STANDARD OF REVIEW……………………………………………………25

ARGUMENT…………………………………………………………………...26

I.      The plain language of 39 U.S.C. § 3663 provides for review in
        this Court of a final order of the Postal Regulatory Commission. ………...26

II.     These petitions for review are from orders of the Postal Regulatory
        Commission and not from orders of the United States Postal Service. ……28

III.    The PRC's order dismissing the appeal of the Final
        Determination to close the Pimmit Branch Post Office
        was arbitrary, capricious and not in accordance with law. ………………...32

IV.     The PRC's order granting the motion to dismiss the appeal
        concerning the Venice, California, Post Office was
        arbitrary, capricious and not in accordance with law. …………………….45

        A.      The PRC relied upon its orders, which are not based on any
                statute or regulation, in Oceana and similar cases to dismiss
                the appeal. …………………………………………………………..46

        B.      The PRC Order failed to consider the commitment by the
                Postal Service and the pertinent regulations concerning the
                historic Venice Post Office and its mural…………………………...47

V.      The PRC's order, which affirmed by a 2-2 tie vote the Final
        Determination to close the Spring Dale, West Virginia, Post
        Office, was arbitrary, capricious and not in accordance with law. ………..50

CONCLUSION……………………………………………………………...56

CERTIFICATE OF COMPLIANCE………..……………………………......57

CERTIFICATE OF SERVICE………………………………………………57

STATUTORY ADDENDUM

ADDENDUM OF POSTAL REGULATORY COMMISSION ORDERS

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page**

*Aid Association for Lutherans v. United States Postal Service*,
  321 F.3d 1166 (D.C. Cir. 2003)……………………………………………………….29

*Block v. Community Nutrition Inst.*, 467 U.S. 340, 351, 104 S.Ct.
  2450, 2457, 81 L.Ed.2d 270 (1984)………………………………………………...26

*Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667,
  106 S.Ct. 2133, 90 L.Ed.2d 623 (1986)………………………………………………26

*LePage's 2000, Inc. v. Postal Regulatory Commission*,
  674 F.3d 862 (D.C. Cir. 2012)………………………………………………….27, 31

*LePage's 2000, Inc. v. Postal Regulatory Commission*,
  642 F.3d 225 (D.C. Cir. 2011)………………………………………………...27

*Missouri P. Rr. v. State Corporation Commission*, 205 Kan. 610,
  470 P.2d 767 (1970)………………………………………………………………..36

*Nat'l Easter Seal Soc'y for Crippled Children & Adults v. USPS*,
  656 F.2d 754 (D.C. Cir. 1981)………………………………………………...29

*\*Reese Brothers, Inc. v. U.S. Postal Service*, 2012 WL 5929033
(D.D.C. Nov. 27, 2012)………………………………………………………...28

*Top Choice Distribs., Inc. v. U.S. Postal Serv.*, 138 F.3d 463
  (2d Cir. 1998)…………………………………………………………………30

*United States Postal Service v. Postal Regulatory Commission*,
  676 F.3d 1105 (D.C. Cir. 2012)……………………………………………….27

*United States Postal Service v. Postal Regulatory Commission*,
  640 F.3d 1263 (D.C. Cir. 2011)……………………………………………….27

*United States Postal Service v. Postal Regulatory Commission*,
   599 F.3d 705 (D.C. Cir. 2010)…………………………………………...27

*Wilson v. United States Postal Service*, 441 F.Supp. 803
   (C.D. Cal. 1977)………………………………………………………37

**Statutes:**

5 U.S.C. § 706…………………………………………………………32

5 U.S.C. § 706(2)(A)…………………………………………………...25

5 USCS § 554……………………………………………………………..32

5 USCS §§ 556, 557, and 701 et seq. …………………………………30

39 U.S.C. § 404(d)…………………………………………33, 34, 36, 39, 42, 46

39 U.S.C. § 404(d)(2)(A)……………………………………………...43, 53

*39 U.S.C. § 404(d)(5)………………………………2, 3, 6, 24, 30, 31, 33, 35, 38

39 U.S.C. § 404(e)(3)…………………………………………………..31

39 U.S.C. § 410(a)………………………………………………29, 30

*39 U.S.C. § 3663..……………………1, 2, 3, 6, 16, 23, 24, 25, 26, 28, 29, 31, 32

Postal Accountability and Enhancement Act of 2006 ("PAEA"),
   Pub. L. No. 109-435, 120 Stat. 3198…………………………………..26

**Regulations:**

39 C.F.R. § 241.2(a)(1)……………………………………………………43

39 C.F.R. § 241.3 [Effective July 14, 2011]………………………........6, 7, 35

*39 C.F.R. § 241.3 [Effective to July 13, 2011]…………………………6, 33, 35

39 C.F.R. § 241.3(a)(1)(i)…………………………………………………………..7

39 CFR § 241.3(a)(2)(iii)……………………………………………………….34

39 CFR § 241.3(a)(2)(v)………………………………………………………..34

39 C.F.R. § 241.3(a)(C)(iii)……………………………………………………15

39 C.F.R. § 241.4………………………………………………………………48

**Legislative Materials:**

151 Cong. Rec. H6511, 6521.  Regarding H.R. 22 (July 26, 2005)………………27

H.R. Rep. No. 108-672 Part 1, at 11.  To accompany
 H.R. 4341 (Sept. 8, 2004)…………………………………………………..28

Hearings on S. 2844 before the Senate Comm. on Post Office and
 Civil  Service, Part 4, 94th Cong., 2d Sess. 142 (1976)…………………………..37

_____

* Authorities upon which the Petitioners chiefly rely

**Decisions of the PRC:**

Docket No. 82-10, Order Dismissing Docket No. 82-10, June 25, 1982
 (Oceana Station, Virginia Beach, Virginia) ……..35, 36, 37, 38, 39, 41, 45, 46, 47

Docket No. A2007-1, Order Dismissing Appeal on Jurisdictional
 Grounds, October 9, 2007 (Ecorse Classified Branch) …………37, 38, 39, 41, 45

Docket No. A2010-3, Order Dismissing Appeal, June 22, 2010
 (East Elko Station) …………………………………………..7, 38, 39, 40, 45

Docket No. A2011-90, Order Dismissing Appeal, January 20, 2010
 (Pimmit Branch, Virginia)…………………………….5, 14, 16, 32, 33, 39, 41, 42

Docket No. A2012-17, Order Granting Motion to Dismiss, January 24,
 2012 (Venice, California)……………………………………….5, 6, 23, 45

Docket No. A2012-8, Order Affirming Determination, January 25, 2012
  (Rhodell, West Virginia) …………………………………………………..51

Docket No. A2012-68, Order Affirming Determination, February 27,
  2012  (Spring Dale, West Virginia)…………………………………5, 6, 23, 50

**Other Authorities:**

Ben Hogwood, *Post office gets renovated*, Carteret County News-Times,
  November 27, 2011………………………………………………………...49

Ed O'Keefe and Lisa Rein, *Postal Service to delay closures*,
  The Washington Post, December 13, 2011…………………………………….9

*Falls Church Post Office Moving*, Postal News, June 8, 2009……………………15

Jennifer Levitz, *Post Office History for Sale*, The Wall Street
  Journal, September 14, 2011………………………………………………..22

Jonathan D. Salant, *U.S. Federal Election Commission Deadlocks on
  Greater '12 Donor Disclosure*, Bloomberg, June 15, 2011……………………..54

Jonathan O'Connell, *Tysons Corner: The building of an American city*,
  The Washington Post, September 24, 2011…………………………………..13

Lisa Rein, *Postal Service's closure review process was flawed, panel
  says*, The Washington Post, December 28, 2011……………………………..10

Lisa Rein, *Postal Service names 3,700 post offices that could be closed*,
  The Washington Post, July 26, 2011…………………………………………...8

Lori Kersey, *Rural post office hours may be shortened*, The Charleston
  Gazette, May 9, 2012………………………………………………………11

Marshall J. Breger and Gary J. Edles, *Established by Practice: The Theory
  and Operation of Independent Federal Agencies*, 52:4 Administrative
  Law Review 1111 (2000)…………………………………………………..53

Martha Groves, *Joel Silver to put his stamp on Venice Post Office*,
  Los Angeles Times, October 10, 2012……………………………………………..21

New Deal Art in Post Offices, United States Postal Service, July 2008………….22

*Post Office Changes*, Postal Bulletin, December 1, 2011………………………...13

Post Plan Meeting Schedule (Week of Dec. 1-7, 2012)…………………………..24

Postal Regulatory Commission Press Release, *PRC Advisory Opinion
  Finds USPS Proposal for Retail Closures Lacks Proper Analysis*,
  December 23, 2011……………………………………………………………..9

*Postal Service Approves Relocation of Venice Post Office*, Postal News,
  July 18, 2011……………………………………………………………………..16

Postal Service Press Release No. 12-054, May 9, 2012…………………………..10

Postal Service Press Release, May 30, 2012………………………………………...19

Ron Nixon, *Postal Service Reports Loss of $15 Billion*, The New York
  Times, November 15, 2012………………………………………………………8

*Superproducer Joel Silver Buying, Saving Venice Post Office*,
  Curbed LA, June 11, 2012……………………………………………………..20

Tysons-Pimmit Regional Library website…………………………………………...13

*USPS 'Story of Venice' Mural Loan Agreement*, Yo! Venice!,
  December 5, 2012……………………………………………………………..21

ix

# GLOSSARY

| Term | Definition |
|---|---|
| APA | Administrative Procedure Act |
| Commission | Postal Regulatory Commission |
| FEC | Federal Election Commission |
| PRC | Postal Regulatory Commission |
| JA | Joint Appendix |
| NHPA | National Historic Preservation Act |
| PAEA | Postal Accountability and Enhancement Act of 2006 |
| RAOI | Retail Access Optimization Initiative |

**No. 12-1095**
**Consolidated with No. 12-1110 and No. 12-1157**
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

ELAINE JOAN MITTLEMAN,

Petitioner,

v.

POSTAL REGULATORY COMMISSION,

Respondent,

UNITED STATES POSTAL SERVICE,

Intervenor.

_____

ON PETITION FOR REVIEW FROM ORDERS OF THE
POSTAL REGULATORY COMMISSION
_____

BRIEF FOR PETITIONERS
_____

**JURISDICTIONAL STATEMENT**

The petitions in these consolidated cases challenge orders of the Postal
Regulatory Commission ("PRC").  This Court has jurisdiction pursuant to 39
U.S.C. § 3663, which has a 30-day time limit to petition for review in this Court.

The final order below in *Mittleman v. Postal Regulatory Commission*, No. 12-1095, was issued by the PRC on January 20, 2012, and the petition was timely filed on February 14, 2012.

The final order below in *Venice Stakeholders Association, et al., v. Postal Regulatory Commission*, No. 12-1110, was issued by the PRC on January 24, 2012, and the petition was timely filed on February 22, 2012.

The final order below in *McClung v. Postal Regulatory Commission*, No. 12-1157, was issued by the PRC on February 27, 2012, and the petition was timely filed on March 23, 2012.

## STANDING

The petitioners have standing under 39 U.S.C. § 3663 because they have been "adversely affected or aggrieved" by final orders of the Postal Regulatory Commission.  The petitioners appealed to the PRC, pursuant to 39 U.S.C. § 404(d)(5), the final determinations by the Postal Service to close their post offices. The final orders of the PRC either dismissed the appeal or affirmed the final determination to close the post office.  Thus, petitioners were adversely affected by the final orders of the PRC, because the orders did not remand the final determinations back to the Postal Service for further consideration.

2

## STATUTES AND REGULATIONS

The pertinent statutory provisions are set out in an addendum to this brief.

## STATEMENT OF THE ISSUES

The petitioners submit that the following issues are presented:

I.      Whether a final order of the Postal Regulatory Commission can be appealed to this Court, pursuant to 39 U.S.C. § 3663.

II.      Whether the Postal Regulatory Commission orders dismissing appeals to the Commission for the Pimmit Branch Post Office in Virginia and the Venice Main Post Office in Venice, California, are arbitrary, capricious and not in accordance with law, when the Commission held that it did not have jurisdiction to consider the appeals.

III.      Whether the Postal Regulatory Commission can create through a Commission order an exception to its statutory jurisdiction, pursuant to 39 U.S.C. § 404(d)(5), to review determinations by the Postal Service to close post offices.

IV.      Whether the Postal Regulatory Commission order dismissing the Pimmit Branch appeal is arbitrary, capricious and not in accordance with law when the order held that the closing of the Pimmit Branch was part of a rearrangement of retail facilities in Falls Church, when the Pimmit Branch is located in Pimmit Hills,

3

a community in Fairfax County, and is not located in the city of Falls Church.

V.      Whether the Postal Regulatory Commission order dismissing the Venice, California, appeal is arbitrary, capricious and not in accordance with law when the order failed to consider the commitment by the Postal Service and the pertinent regulations concerning the historic Venice Post Office and its mural.

VI.      Whether the Postal Regulatory Commission order affirming the final determination of the Postal Service to close the Spring Dale, West Virginia, Post Office can be considered an affirmance when the Commission vote was a 2-2 tie.

VII.      Whether a tie vote of the Postal Regulatory Commission can be considered an affirmance when there appear to be no statutes, regulations or rules concerning tie votes.

## STATEMENT OF THE CASE

Petitioners had filed appeals to the Postal Regulatory Commission about final determinations of the Postal Service to close their post offices.  Petitioners in this matter are Elaine Mittleman in *Mittleman v. Postal Regulatory Commission*, No. 12-1095; Venice Stakeholders Association, Mark Ryavec, Greta Cobar, Jonathan Kaplan, Sue Kaplan, Jethro Pauker, James Smith, and Free Venice

Beachhead newspaper in *Venice Stakeholders Association, et al., v. Postal Regulatory Commission*, No. 12-1110; and Paul McClung, Gary Walker, Angie Brown, Betty Puckett and Arlene Ingram in *McClung, et al., v. Postal Regulatory Commission*, No. 12-1157.

The Respondent in this matter is the Postal Regulatory Commission.  The Intervenor is the United States Postal Service.

The rulings under review are Order No. 1159, issued on January 20, 2012, of the Postal Regulatory Commission in Docket No. A2011-90, relating to the appeal of the final determination of the United States Postal Service concerning the Pimmit Branch Post Office in Falls Church, Virginia; Order No. 1166, issued on January 24, 2012, of the Postal Regulatory Commission in Docket No. A2012-17, relating to the appeal of the final decision of the United States Postal Service concerning the Venice Post Office in Venice, California; and Order No. 1262, issued on February 27, 2012, of the Postal Regulatory Commission in Docket No. A2012-68, relating to the appeal of the final determination of the United States Postal Service concerning the Spring Dale Post Office in Spring Dale, West Virginia.

The petition for review in this Court of Order 1159, issued on January 20,

2012, was timely filed on February 14, 2012, pursuant to 39 U.S.C. § 3663.  The

petition for review in this Court of Order 1166, issued on January 24, 2012, was

timely filed on February 22, 2012, pursuant to 39 U.S.C. § 3663.  The petition for

review in this Court of Order 1262, issued on February 27, 2012, was timely filed

on March 23, 2012, pursuant to 39 U.S.C. § 3663.

In an order dated August 30, 2012, this Court ordered that these cases be

consolidated.  It also ordered that the pending motions to dismiss be referred to the

merits panel.  The parties were directed to address in their briefs the issues

presented in the motions to dismiss.

## STATEMENT OF THE FACTS

**I.    Appeals of Post Office Closings to the Postal Regulatory Commission**

There is a right to appeal to the Postal Regulatory Commission a

determination of the Postal Service to close a post office.  The pertinent statute, 39

U.S.C. § 404(d)(5), provides that:

> A determination of the Postal Service to close or consolidate any post
> office may be appealed by any person served by such office to the Postal
> Regulatory Commission within 30 days after such determination is made
> available to such person under paragraph (3).

> The regulations for a post office closing are set out in 39 CFR § 241.3.

> The initiative of the Postal Service to close post offices  resulted in a  much

6

greater volume of appeals to the Postal Regulatory Commission.  There had been a long-standing disagreement between the Postal Service and the Postal Regulatory Commission concerning the appeals to the PRC of the closings of stations and branches.  The Postal Service had argued that stations and branches are not post offices and there was no right to appeal a closing determination to the PRC. The PRC had permitted appeals of stations and branches to proceed.  *See* Docket No. A2010-3, Order Dismissing Appeal, June 22, 2010 (East Elko Station) (included in Addendum of PRC Orders at 17) at 5-6.  This dispute may have been resolved by the revisions to 39 C.F.R. § 241.3 that were effective on July 14, 2011.  *See* 39 C.F.R. § 241.3(a)(1)(i).

## II.     United States Postal Service's Financial Situation

The United States Postal Service is facing severe financial difficulties.  For the fiscal year that ended on September 30, 2012, the Postal Service reported a loss of $15.9 billion.  In light of the serious financial situation, a variety of legislative actions and Postal Service initiatives have been proposed or undertaken to address the financial difficulties. The loss included accounting expenses of $11.1 billion related to payments for the future retiree health benefits fund.  The Postal Service has been urging Congress to pass legislation that would allow it to save costs,

7

including cutting the number of weekly mail delivery days to five, reducing required payments for the future retiree health benefits fund, and to increase revenue by entering into new lines of business. *See* Ron Nixon, *Postal Service Reports Loss of $15 Billion*, The New York Times, November 15, 2012 (available at http://www.nytimes.com/2012/11/16/us/politics/postal-service-reports-a-nearly-16-billion-loss.html).

One initiative, the Retail Access Optimization Initiative ("RAOI"), undertaken in July 2011 by the Postal Service, was to close about 3,700 post offices. The Postal Service estimated that closing the 3,700 post offices would result in a cost savings of about $200 million. In this initiative, the Postal Service conducted community meetings. Postal customers could appeal to the Postal Regulatory Commission a final determination to close a post office. *See* Lisa Rein, *Postal Service names 3,700 post offices that could be closed*, The Washington Post, July 26, 2011 (available at http://www.washingtonpost.com/politics/postal-service-names-3700-post-offices-that-could-be-closed/2011/07/26/gIQARk3tbI_story.html).

On December 13, 2011, the Postal Service announced a moratorium until May 15, 2012, on closing post offices. The Postal Service said it would delay the

8

closings of thousands of post offices in response to requests from lawmakers who said Congress first needed to pass legislation to overhaul the Postal Service, which is facing severe financial difficulties. *See* Ed O'Keefe and Lisa Rein, *Postal Service to delay closures*, The Washington Post, December 13, 2011 (available at http://www.washingtonpost.com/politics/postal-service-to-delay-closures/2011/12/13/gIQAUadesO_story.html).

On December 23, 2011, the Postal Regulatory Commission issued an Advisory Opinion on the Retail Access Optimization Initiative. According to a press release, Ruth Goldway, Chairman of the PRC, stated:

> The Commission was unanimous in expressing its concern that the Postal Service's plan did not and could not, because of lack of data and analysis, determine the facilities most likely to serve the greatest number, reduce the greatest costs, or enhance the potential for growth or stability in the system. We agree that the Postal Service access network should be right-sized but found that the RAOI was not the proper approach to meet that goal.

The Commission recommended that training for local managers implementing the process should include the statutory requirements applicable when evaluating a retail postal facility for closure. *See* Postal Regulatory Commission Press Release, *PRC Advisory Opinion Finds USPS Proposal for*

9

*Retail Closures Lacks Proper Analysis*, December 23, 2011 (available at http://www.prc.gov/prc-docs/Newsroom/PressReleases/PRC%20003%20Press%20Release%20Dec.%2023,%202011-_2355.pdf).

Senator Susan Collins said the report supports "my and many of my colleagues' skepticism about the wisdom of mass postal closures without a more thoughtful, transparent and data-driven process." *See* Lisa Rein, *Postal Service's closure review process was flawed, panel says*, The Washington Post, December 28, 2011 (available at http://www.washingtonpost.com/politics/postal-services-closure-review-process-was-flawed-panel-says/2011/12/28/gIQA5oHNNP_story.html).

On May 9, 2012, the Postal Service issued press release No. 12-054 (available at http://about.usps.com/news/national-releases/2012/pr12_054.htm). The press release discussed the new strategy of the Postal Service to preserve post offices. The new plan would keep existing post offices in place, but with modified retail window hours to match customer use. The press release explained that the Postal Service had implemented a voluntary moratorium on all postal facility

10

closings through May 15, 2012, and that no closings or changes to Post Office operations would occur until after that time. Postmaster General and CEO Patrick R. Donahoe stated that "we've listened to our customers in rural America and we've heard them loud and clear – they want to keep their Post Office open."

A story in the Charleston, W.Va., Gazette, discussed the new plan and its effect on West Virginia. Sen. Joe Manchin, D-W.Va., said he had pushed hard to keep the state's post offices open because "they truly are a lifeline and they provide vital services to so many West Virginians." Rep. Nick Rahall, D.-W.Va., commented "Hallelujah! Today's newest Postal Service plan appears to be welcome news for southern West Virginia families and businesses who joined me in the hard fight over these months to save our post offices." *See* Lori Kersey, *Rural post office hours may be shortened*, The Charleston Gazette, May 9, 2012 (available at http://wvgazette.com/topFeatures/201205090274).

This new plan of the Postal Service presumably means that there will be few final determinations to close post offices while the plan is being implemented. As a result, there likely will be virtually no appeals of closings to the Postal Regulatory Commission. The wave of appeals from the initiative to close post offices has ended and the Postal Regulatory Commission has few appeals pending. The PRC appeals that are the subject of this appeal began before the Postal Service

11

changed its policy from closing post offices to reducing post office hours.

Further, it is not clear at this time whether the Postal Service will revoke or withdraw the final determinations it has issued to close post offices in light of the new strategy to keep post offices open, but to modify retail window hours. It is possible that the Postal Service in the future may once again decide to close post offices. If that occurs, then there likely will be appeals of the determinations to close post offices to the Postal Regulatory Commission.

## III.    Specific Post Offices at Issue in this Appeal

### A.     Pimmit Branch Post Office in Northern Virginia

The Pimmit Branch Post Office was located at 7520 Leesburg Pike, Falls Church, Virginia  22043.  This branch was closed in November 2011, but the facility is still available.  The notice of closing is still on the door.  Even though it has a Falls Church mailing address, the Pimmit Branch is not in the City of Falls Church.  The Pimmit Branch is in the Pimmit Hills community of Fairfax County. Pimmit Hills is located near the burgeoning Tysons Corner area of Fairfax County.

In a notice about Post Office changes, the Postal Service described the change for the Pimmit Branch as "Classified Branch discontinued.  Retain ZIP

12

Code.  Continue to use Falls Church VA 22043 as last line of address."  The effective date of the change was November 12, 2011.  *See Post Office Changes*, Postal Bulletin, December 1, 2011 (available at http://about.usps.com/postal-bulletin/2011/pb22325/html/info_001.htm).

The Pimmit Branch Post Office was very close to the Tysons-Pimmit Regional Library, which is located at 7584 Leesburg Pike, Falls Church, Virginia 22043.  The Fairfax County website discusses the location as "near Interstate 66 and the Capitol Beltway in Tysons Corner, Virginia.  Its central location makes the library a popular place for meetings and regional activities."  *See* Tysons-Pimmit Regional Library (available at http://www.fairfaxcounty.gov/library/branches/ty/#). The Pimmit Branch had essentially the same convenient location as the Tysons-Pimmit Regional Library.  It is widely known that there is substantial further development planned for the Tysons Corner area. *See* Jonathan O'Connell, *Tysons Corner: The building of an American city*, The Washington Post, September 24, 2011 (available at  http://www.washingtonpost.com/business/tysons-corner-the-building-of-an-american-city/2011/07/29/gIQAae2atK_story.html).

On September 27, 2011, Elaine J. Mittleman filed a petition, Joint Appendix ("JA") 14, with the Postal Regulatory Commission seeking review of the Final

Determination of the Postal Service to close the Pimmit Branch. *See* PRC Order No. 1159 Dismissing Appeal in Docket No. A2011-90, January 20, 2012, at 2.  JA 26.  The Final Determination to Close the Pimmit Branch, signed by Dean J. Granholm, Vice President, Delivery and Post Office Operations, USPS, on June 20, 2011, is at JA 6.

By letter dated October 11, 2011, JA 24, Dranesville District Supervisor John W. Foust petitioned the Commission to reconsider its decision to close the Pimmit Branch.  Supervisor Foust stated that "A number of my constituents have voiced concern that the Postal Service intends to close the Pimmit Branch on November 10, 2011.  The branch is located in a very convenient place and is used by many neighbors, including those without cars, and businesses.  …  The September 14 notice [of closing] took many customers by complete surprise as they had received no prior notice that the branch was being considered for closing."  *See* Letter dated October 11, 2011, from John W. Foust, Dranesville District Supervisor, Commonwealth of Virginia, County of Fairfax.

The Pimmit Branch was very profitable.  The office receipts were $687,149 in FY 2009, $844,764 in FY 2008 and $821,543 in FY 2007.  *See* Final Determination to Close the Pimmit Branch at 1.  JA 7.

14

The Postal Service explained that the discontinuance of the Pimmit Branch was subject to the procedures set forth in Chapter 7 of Handbook PO-101 (August 2004) updated with Postal Bulletin revisions through August 2, 2007 (2007 Handbook PO-101). *See* United States Postal Service Response to Order No. 1005, PRC Docket No. A2011-90, December 2, 2011, Doc ID 78271, at 2.  According to the Postal Service, these regulations were carried forward for discontinuance actions commencing before July 14, 2011.  *See* 39 C.F.R. § 241.3(a)(C)(iii).

On June 20, 2009, the Postal Service had relocated the retail operation from the Falls Church Main Post Office at 301 W. Broad Street, Falls Church, to the Finance Station at 800 W. Broad Street.  *See Falls Church Post Office Moving*, Postal News, June 8, 2009 (available at http://about.usps.com/news/state-releases/va/2009/va_2009_0608.htm).  The press release explained that the "move is necessary to make way for the new Falls Church City Center currently under construction.  The new City Center will be built on the city-owned public parking lot currently used by Broad Street Postal Customers. … The facility at 301 W. Broad Street will continue to house carrier delivery operations."  The move of the retail operation in the city of Falls Church occurred more than two years before the Pimmit Branch was closed on November 10, 2011.  As discussed above, the

15

Pimmit Branch was not located in the city of Falls Church. The Pimmit Branch was in the Pimmit Hills community and not in the city of Falls Church.

Ms. Mittleman, who had sought review of the Final Determination before the PRC, filed a petition for review of PRC Order No. 1159, issued January 20, 2012, in this Court. The petition for review in this Court was timely filed on February 14, 2012, pursuant to 39 U.S.C. § 3663.

### B. Venice, California, Main Post Office

The Venice Main Post Office was located at 1601 Main Street, Venice, California. On July 18, 2011, the Postal Service announced that it had approved the relocation of the Venice Post Office to the Venice Carrier Annex, 313 Grand Boulevard. *See Postal Service Approves Relocation of Venice Post Office*, Postal News, July 18, 2011 (available at http://about.usps.com/news/state-releases/ca/2011/ca_2011_0718b.htm).

According to the press release, the Postal Service notified the City of Los Angeles and the Venice Neighborhood Council of its proposed plan on March 3, 2011. Postal Service representatives met with the Venice Neighborhood Council and members of the community on April 26 and May 2 to share information and

16

gather public input.  A written public comment period was open until June 1.  The Venice relocation proposal and public input received were forwarded on July 7 to the Postal Service Headquarters in Washington, D.C., where the final decision was made.

A letter dated March 3, 2011, was sent to Los Angeles Mayor Antonio Villaraigosa from Diana K. Alvarado, Team Leader, Facilities Optimization, Pacific Facilities Service Office, United States Postal Service. JA 53. The letter stated "In an effort to control and cut costs, it has been determined that it would be in the best interest of the Postal Service to relocate the retail services currently located at 1601 Main Street in Venice, California directly across the street to our facility located at 313 Grand Boulevard in Venice, California."  The letter further explained that "We ask your assistance and cooperation in relocating these retail services."

A Postal Service document about the Venice Main Post Office titled "Actions & Costs" provided information about the planned action.  JA 47.  The Action was described as "Vacate Venice Main Post Office."  The document showed that the broker's  opinion  of  value was $4,800,000.   A  related document

17

stated that the Node Selection Criteria was "Revenue Generation Opportunity, Surplus Space." JA 46.

In a letter dated September 23, 2011, David E. Williams of the Postal Service explained that he was designated as the decision maker in the request for review of the decision to relocate retail services currently located at 1601 Main Street, Venice, California. JA 55. The final decision of the Postal Service regarding the requests for review concerning that facility was attached to the letter. Mr. Williams stated that he would not set aside the original decision.

The final decision addressed the historic preservation issues for the Venice Main Post Office as follows:

> The Venice Main Post Office was constructed in 1939 and is eligible for listing in the National Register of Historic Places.  An oil-on-canvas mural entitled "Story of Venice" by artist Edward Biberman is currently on display in the lobby.  Several customers expressed concern that the building and/or mural would not be preserved.
>
> Section 106 of the National Historic Preservation Act ("NHPA") requires federal agencies to take into account the effects of their proposed undertakings on historic properties, and when such effects are possible, to initiate and complete the Section 106 consultation process.  Section 106 review ensures that federal agencies consider historic properties, along with other factors such as cost and agency mission, in the planning process of proposed undertakings.  However, the preservation of every historic property is not the goal of Section 106, nor does Section 106 require a business to continue to operate in a historic property even if doing so causes the business to become unprofitable.

The relocation of retail services is not an "undertaking" within the meaning of Section 106. An undertaking is a "project, activity or program" that can result in changes in the character or use of historic properties. The relocation of retail services does not alter the character of the Venice Main Post Office building or the mural. Nor does it change the uses that can be made of the property. There will be no "undertaking" within the meaning of NHPA until the Postal Service adopts a plan for the reuse of the Venice Main Post Office or the transfer of the Post Office building from Postal Service ownership to private ownership. The Postal Service will initiate the Section 106 consultation process when it develops plans for the reuse or disposal of the property, and the City of Venice will be a consulting party. The Postal Service will include measures to ensure the mural will remain available for public viewing in any plan for reuse or disposal of the Post Office property.

In a press release dated July 18, 2011, the Postal Service announced that it had approved the relocation of the Venice Post Office, 1601 Main Street, to the Venice Carrier Annex, 313 Grand Boulevard. JA 54. The press release explained that, once the move was completed, plans called for the sale of the building at 1601 Main Street. Further, the press release noted that the facility is a registered historic building and the Postal Service will ensure the historic characteristics are maintained through covenants conveyed to a future buyer as an attachment to the deed.

In a press release dated May 30, 2012, the Postal Service announced that the Venice Post Office will open in its new location on June 18, 2012.

The press release is available at http://about.usps.com/news/state-releases/ca/2012/ca_2012_0530.htm.

According to media reports, the Venice Main Post Office has been sold. One article stated that film producer Joel Silver had signed papers and was waiting on the United States Postal Service to finalize things. The article further explained that Mr. Silver has stated that he was willing to sign a binding covenant to preserve the building and the "Story of Venice" mural in its historic condition. He would also guarantee public access to the building's foyer and the mural. Mr. Silver is known as a preservationist and has restored the Frank Lloyd Wright-designed Storer House on Hollywood Boulevard. *See Superproducer Joel Silver Buying, Saving Venice Post Office*, Curbed LA, June 11, 2012 (available at http://la.curbed.com/archives/2012/06/superproducer_joel_silver_buying_preserving_venice_post_office.php).

The Venice Main Post Office has been sold. However, it is not clear what measures are being undertaken by the Postal Service to ensure that the mural will remain available for public viewing now that Joel Silver owns the post office building. The 1941 Edward Biberman mural that depicts Venice's early history remains the property of the Postal Service and will be fully restored.

20

Mr. Silver has stated that he plans to let members of the public make reservations to see the mural. *See* Martha Groves, *Joel Silver to put his stamp on Venice Post Office*, Los Angeles Times, October 10, 2012 (available at http://www.latimes.com/news/local/la-me-venice-post-office-20121011,0,3100958.story).

It has been reported that there is a document in which Joel Silver agreed "to provide public access to the mural six days per calendar year during the hours of 10 a.m. to 6 p.m. Pacific Time by appointment." *See USPS 'Story of Venice' Mural Loan Agreement*, Yo! Venice!, December 5, 2012 (available at http://www.yovenice.com/2012/12/05/usps-story-of-venice-mural-loan-agreement/).

The Postal Service is in the process of selling historic post offices. Many of the post offices have murals or sculptures from the New Deal era. The Postal Service maintains ownership of all New Deal-era murals and sculptures when it sells buildings. Also, it takes great pains to move the artwork to a local library or other public venue or work out a loan agreement with the new owner. Buyers of the properties are required to follow historic preservation agreements that limit what can be done with the property.

21

*See* Jennifer Levitz, *Post Office History for Sale*, The Wall Street Journal,

September 14, 2011 (available at

http://professional.wsj.com/article_email/SB1000142405311190353280457656911

0126911004-

lMyQjAxMTAyMDAwNzEwNDcyWj.html?mod=wsj_valettop_email).

The Postal Service has stated that it has made every effort to preserve and

safeguard New Deal Art, including murals, located in post offices.  *See* New Deal

Art in Post Offices, United States Postal Service, July 2008 (available at

http://about.usps.com/who-we-are/postal-history/new-deal.pdf).

> This document states that:

> Today, the murals and sculpture form a vital part of America's
> national heritage.  Recognizing the importance of this collection,
> the United States Postal Service is making every effort to preserve
> and safeguard it for future generations.  Also, to maintain the
> spirit of the section in placing artwork in Post Offices, postal
> policy provides for the relocation of these works into the new
> facility when a Post Office moves so the art can continue to enrich
> people during the normal course of their daily lives.

On October 17, 2011, Mark Ryavec and Venice Stakeholders Association

filed a petition, JA 59, with the Postal Regulatory Commission seeking review of

the final decision of the Postal Service to relocate the Venice Main Post Office.

Several additional similar petitions for review were also filed.   *See* PRC Order No.

22

1166 Granting Motion to Dismiss in Docket No. A2012-17, January 24, 2012, at 1. JA 75.

Petitioners, who had sought review of the final decision before the PRC, filed a petition for review of PRC Order No. 1166, issued January 24, 2012, in this Court. The petition for review in this Court was timely filed on February 22, 2012, pursuant to 39 U.S.C. § 3663.

### C.    Spring Dale, West Virginia, Post Office

On November 14, 2011, Paul McClung filed a petition, JA 102, with the Postal Regulatory Commission seeking review of the Final Determination of the Postal Service to close the Spring Dale, West Virginia, post office. Several additional petitions for review were filed. *See* PRC Order No. 1262 Affirming Determination in Docket No. A2012-68, February 27, 2012, at 2. JA 115. The PRC affirmed the Final Determination to close the Spring Dale post office. The vote of the PRC on this appeal was 2-2.

Petitioners, who had sought review of the Final Determination before the PRC, filed a petition for review of PRC Order No. 1262, issued February 27, 2012, in this Court. The petition for review in this Court was timely filed on March 23, 2012, pursuant to 39 U.S.C. § 3663.

23

The Spring Dale Post Office is now included in the new plan of the Postal Service to reduce hours, rather than close post offices.  The Postal Service has been conducting community meetings in those communities whose post offices are planned to have reduced hours. The community meeting for Spring Dale, WV, was conducted on December 6, 2012, at the Spring Dale Post Office. *See* Post Plan Meeting Schedule (Week of Dec. 1-7, 2012) (available at http://about.usps.com/news/electronic-press-kits/our-future-network/assets/pdf/12012012.pdf).

## SUMMARY OF ARGUMENT

The language of 39 U.S.C. § 3663 clearly permits a petition for review to this Court of a final order of the Postal Regulatory Commission.  This Court has jurisdiction to review the final orders of the Postal Regulatory Commission in this appeal.

The Postal Regulatory Commission dismissed the appeals of the Pimmit Branch in Virginia and the Venice, California, Main Post Office based on its orders in which it created an exception to the statutory right to appeal, pursuant to 39 U.S.C. §404(d)(5).  The dismissal of the appeals is arbitrary, capricious and not in accordance with law.  The Postal Regulatory Commission order concerning the

24

Pimmit Branch is also arbitrary, capricious and not in accordance with law because the Commission held that that the closing of the Pimmit Branch was part of a rearrangement of retail facilities in Falls Church, when the Pimmit Branch is located in Pimmit Hills, which is part of Fairfax County, and not in the city of Falls Church.

The Postal Regulatory Commission order dismissing the Venice, California, appeal is arbitrary, capricious and not in accordance with law when the order failed to consider the commitment by the Postal Service and the pertinent regulations concerning the historic Venice Post Office and its mural.

The Postal Regulatory Commission affirmed the determination of the Postal Service to close the Spring Dale, West Virginia, Post Office by a 2-2 vote. The Commission assumed that a 2-2 vote would be treated as an affirmance. This assumption is not based on any statute, regulation or rule and is arbitrary, capricious and not in accordance with law. The Commission should not have affirmed the determination based on a tie vote.

## STANDARD OF REVIEW

A final order of the Postal Regulatory Commission must be held unlawful and set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See* 39 U.S.C. § 3663, which

25

adopts that standard.

## ARGUMENT

**I.  The plain language of 39 U.S.C. § 3663 provides for review in this Court of a final order of the Postal Regulatory Commission.**

The Postal Accountability and Enhancement Act of 2006 ("PAEA"), Pub. L. No. 109-435, 120 Stat. 3198, included provisions to address the functions of the Postal Service and oversight of the Postal Service by the Postal Regulatory Commission.  One of the provisions, 39 U.S.C. § 3663, provides review in this Court of a final order or decision of the Postal Regulatory Commission.

There is a strong presumption that Congress intends that the federal courts review agency action. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).  If there is substantial doubt about congressional intent concerning judicial review, the general presumption favoring judicial review of administrative action is controlling.  *Block v. Community Nutrition Inst.*, 467 U.S. 340, 351, 104 S.Ct. 2450, 2457, 81 L.Ed.2d 270 (1984).  The standard for determining whether "a particular statute precludes judicial review is determined not only from the express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and nature of the administrative action involved."  *Id.* at 345, 104 S.Ct. at 2453.

This Court has previously considered appeals of orders of the Postal Regulatory Commission. *See United States Postal Service v. Postal Regulatory Commission*, 599 F.3d 705 (D.C. Cir. 2010); *United States Postal Service v. Postal Regulatory Commission*, 640 F.3d 1263 (D.C. Cir. 2011); *United States Postal Service v. Postal Regulatory Commission*, 676 F.3d 1105 (D.C. Cir. 2012); *LePage's 2000, Inc. v. Postal Regulatory Commission*, 642 F.3d 225 (D.C. Cir. 2011); *LePage's 2000, Inc. v. Postal Regulatory Commission*, 674 F.3d 862 (D.C. Cir. 2012).

It is clear that Congress intended that a final order of the PRC can be appealed to this Court. In a letter dated May 12, 2005, to Rep. Tom Davis from Rep. F. James Sensenbrenner, Jr., Chairman of the House Committee on the Judiciary, there was a discussion about provisions involving the subject matter jurisdiction within the Committee on the Judiciary. Rep. Sensenbrenner wrote that:

> There are several provisions contained in H.R. 22 within the Committee on the Judiciary's subject matter jurisdiction. Specifically, section 205 of the legislation revises the complaint and appellate review of the Postal Regulatory Commission.

151 Cong. Rec. H6511, 6521. Regarding H.R. 22 (July 26, 2005).

The Report for an earlier version of this legislation plainly states that:

27

> Section 3663 provides for appeals of any order or decision of the Postal
> Regulatory Commission to the United States Court of Appeals for the
> District of Columbia Circuit in accordance with chapter 706 of title 5 and
> chapter 158 of title 28.

H.R. Rep. No. 108-672 Part 1, at 11.  To accompany H.R. 4341 (Sept. 8, 2004).

Judge Huvelle recently cited 39 U.S.C. § 3663 in a list of provisions in which Congress said there should be judicial review.  She noted that 39 U.S.C. § 3663 provides that APA review by the Court of Appeals is available to a person "adversely affected or aggrieved by a final order or decision of the Postal Regulatory Commission."  *See Reese Brothers, Inc. v. U.S. Postal Service*, 2012 WL 5929033 (D.D.C. Nov. 27, 2012) at *24 n. 37.

Thus, there is no doubt that an appeal to this Court of a final order of the PRC is permitted.  There is no language in this statute which precludes an appeal.  To the contrary, there is language in 39 U.S.C. § 3663 which specifically permits a "person … adversely affected or aggrieved by a final order or decision of the Postal Regulatory Commission" to file a petition for review in this Court.

## II.    These petitions for review are from orders of the Postal Regulatory Commission and not from orders of the United States Postal Service.

The petitions for review in this appeal are from orders of the Postal Regulatory Commission.  The petitions are not from orders or decisions of the

28

United States Postal Service. The PRC in its motions to dismiss appeared to assume that these petitions are from orders of the United States Postal Service or that the cases concerning the Postal Service are pertinent. Thus, the PRC cited cases involving the Postal Service in its motions.

The PRC discussed what it described as a similar provision in 39 U.S.C. § 410(a). However, that provision concerns whether federal laws should apply to the exercise of the powers of the Postal Service. This Court has indicated that § 410(a) exempts the Postal Service from notice and comment rulemaking procedures of the Administrative Procedure Act ("APA"). *See Aid Association for Lutherans v. United States Postal Service*, 321 F.3d 1166, 1172 (D.C. Cir. 2003), *citing Nat'l Easter Seal Soc'y for Crippled Children & Adults v. USPS*, 656 F.2d 754, 766 (D.C. Cir. 1981).

There are numerous reasons why that argument is simply not applicable here. First, the question of judicial review in that case concerned the Postal Service and not a final order of the PRC. Second, judicial review in that case concerned litigation in a district court, not a petition for review in this Court pursuant to 39 U.S.C. § 3663. Finally, this Court held that judicial review was available in that case. *Aid Association for Lutherans v. USPS*, 321 F.3d at 1168. Thus, that case provides no support for the PRC's argument that a final order of the

29

PRC is not reviewable in this Court.

Moreover, the PRC asserted that every Circuit to have addressed the question has concluded that § 410(a) bars judicial review of Postal Service actions under the Administrative Procedure Act. The PRC did cite several cases in which the argument about judicial review of Postal Service actions was considered waived. One of those cases cited by the PRC is *Top Choice Distribs., Inc. v. U.S. Postal Serv*., 138 F.3d 463 (2d Cir. 1998). In that case, the Postal Service had conceded that judicial review of final agency actions pursuant to the Administrative Procedure Act is appropriate. *Id.* at 465 n. 1.

Further, in discussing the language of § 404(d)(5), the PRC stated that the statutory language was that the APA shall not apply to Commission decisions reviewing post office closure or consolidation determinations. The PRC does not correctly describe the statutory language, which is that "[t]he provisions of section 556, section 557, and chapter 7 of title 5 [5 USCS §§ 556, 557, and 701 et seq.] shall not apply to any review carried out by the Commission under this paragraph." The statutory provision involving the APA concerns "any review carried out by the Commission" and not "Commission decisions." A fair reading indicates that the identified provisions of the APA do not apply to the procedures used during the review process conducted by the PRC. By contrast, the APA does apply to the

30

review in this Court of a final order or decision of the PRC.

The PRC again confused the meaning of § 404(d)(5) in its argument about general and specific statutory provisions. The PRC stated that "Congress retained the provision precluding APA review of Commission decisions under 39 U.S.C. § 404(d)(5)" when it amended portions of § 404(d). However, the provision in § 404(d)(5) does not preclude APA review of PRC decisions, as the PRC claimed. The provision indicates that certain sections of the APA shall not apply to any review carried out by the PRC. Thus, there is no issue of seemingly inconsistent provisions in the same statute. The language of § 404(d)(5) and § 3663 refer to different situations. Those provisions are not contradictory or inconsistent.

This Court recently discussed the status of certain proceedings before the PRC. In *LePage's 2000, Inc. v. Postal Regulatory Commission*, 674 F.3d at 868, there was a question about the type of proceedings before the PRC for the determination of attorneys' fees. The proceedings before the PRC in that case, which were governed by 39 U.S.C. § 404(e)(3), did not require a hearing. Thus, the proceedings were not considered an "adversary adjudication" for purposes of awarding attorneys' fees. This Court further explained that the generic provisions of chapter 5 of title 5 may apply even if the formal adjudication provisions of §

31

554 do not.

Similarly, in this case, even if certain provisions of title 5 do not apply to proceedings before the PRC, generic provisions of title 5 may apply. Moreover, these provisions concern proceedings before the PRC and not petitions for review by this Court of a final order of the PRC. The statutory provision of 39 U.S.C. § 3663 states that this Court shall review the PRC order in accordance with section 706 of title 5 on the basis of the record before the PRC. It is clear that a final order of the PRC can be reviewed by this Court.

## III. The PRC's order dismissing the appeal of the Final Determination to close the Pimmit Branch Post Office was arbitrary, capricious and not in accordance with law.

The Postal Service announced by letter dated September 14, 2011, that the Pimmit Branch Post Office would close on November 10, 2011. JA 17; 32. Elaine Mittleman filed a petition with the PRC seeking review of the Postal Service's Final Determination to close the Pimmit Branch located near Falls Church, Virginia. JA14. Karl Ritchey submitted a petition, which the PRC treated as a notice of intervention. JA 27. Dranesville District Supervisor John W. Foust submitted a letter to the PRC. JA24. On January 20, 2012, the PRC issued an Order Dismissing Appeal. The Order stated that the petition was dismissed "for lack of jurisdiction." JA 26-27.

32

In the Order Dismissing Appeal at 12, JA 37, the PRC concluded that:

> The closing of the Pimmit Branch was part of a rearrangement of
> retail facilities in the Falls Church, Virginia area. The Commission
> has consistently held that the requirements of section 404(d) do not
> apply to such rearrangements. Accordingly, this proceeding is
> dismissed.

The PRC erred in deciding that the closing of the Pimmit Branch was part of

a rearrangement of retail facilities. The PRC ignored the fact that the Postal

Service considered the action taken to be a closing and followed the procedures for

a closing set out in 39 CFR § 241.3. The pertinent regulations concern closings.

The term, "rearrangement of retail facilities," is not part of the regulatory scheme,

but appears to be a phrase created by the PRC.

The language of 39 U.S.C. §404(d)(5) provides that:

> A determination of the Postal Service to close or consolidate any post
> office may be appealed by any person served by such office to the Postal
> Regulatory Commission within 30 days after such determination is made
> available to such person under paragraph (3).

The record plainly showed that the action taken concerning the Pimmit

Branch was a closing, which is subject to the provisions of 39 U.S.C. §404(d).

However, the PRC instead described the closing as "part of a rearrangement of

retail facilities" and held that the section 404(d) provisions, including the right to

appeal the closing determination to the PRC, do not apply. The ruling of the PRC

that it did not have jurisdiction to consider the appeal of the closing determination

33

of the Pimmit Branch is arbitrary, capricious and not in accordance with law.

In closing the Pimmit Branch, the Postal Service did not comply with some of the procedures required by §404(d) for a closing, because the Postal Service had taken the position that it did not have to comply with certain procedures when a branch is closed. Even if the Postal Service did not comply with the full procedures for a closing, there is no doubt that the Postal Service considered the action taken to be a closing. *See* Final Determination to Close the Pimmit Branch, VA Office, at 1, which stated that "(t)he Postal Service has determined to close the Pimmit Branch." JA 7. The Final Determination at 3 stated that one disadvantage of the proposal was "(t)he loss of a retail outlet in the community." JA 9.

The present regulations include the definition of "closing" as "an action in which Post Office operations are permanently discontinued without providing a replacement facility in the community." A "discontinuance" means either a closure or a consolidation. *See* 39 CFR § 241.3(a)(2)(iii) and (v). The closing of the Pimmit Branch meets this definition of closing, because no replacement facility in the community was provided.

The previous regulations on discontinuance of post offices provided that:

34

"(t)his section establishes the rules governing the Postal Service's consideration of whether an existing post office should be discontinued. The rules cover … any proposal to discontinue a post office without providing a replacement facility." *See* 39 CFR § 241.3(a)(1) [Effective to July 13, 2011].

The Postal Service and PRC have been using the distance between post offices as a measure of the adequacy of postal service available when evaluating closings and relocations. However, the regulations do not include any mention of distance between post offices. Instead, the regulations concern the availability of service within a community. *See* 39 C.F.R. § 241.3.

The PRC based its holding that it lacks jurisdiction on previous PRC orders, rather than on statutes and regulations. The primary order relied upon is a 1982 order concerning Oceana in Virginia Beach, Virginia. In the Oceana appeal, the Postal Rate Commission discussed the issue of relocation within a community. The Postal Rate Commission explained that:

> The Postal Service notes that Oceana is one of the many residential areas of Virginia. Various small communities in the county have also been blended into the city of Virginia Beach. … The requirements of section 404(b) do not pertain to the specific building housing the post office; but rather are concerned with the provision of a facility within the community. We do not believe that section 404(b) was intended to govern the Postal

35

Service's decisionmaking on improving or relocating facilities
within the community.

*See* Docket No. 82-10, Order Dismissing Docket No. 82-10, June 25, 1982
(Oceana Station, Virginia Beach, Virginia) (included in Addendum of PRC Orders
at 1) at 5-6. It is clear that the basis for the holding is that there would be facilities
and service within the community, which was the city of Virginia Beach. The
Postal Rate Commission indicated that it believed that Congress gave the
Commission no jurisdiction to hear appeals concerning where retail facilities are to
be located within the community.

However, in the Oceana Order at 7, the Postal Rate Commission relied upon
an unexplained comparison with the case, *Missouri P. Rr. v. State Corporation
Commission*, 205 Kan. 610, 470 P.2d 767 (1970). In that case, the Missouri
Pacific Railroad Company filed an application with the State Corporation
Commission to transfer agency stations into mobile agency routes. The reasoning
in that case is not instructive on issues concerning post office closings.

The Postal Rate Commission again emphasized the importance of the
community in discussing consolidations. It noted that:

> In including consolidations in section 404(b), Congress was expressing
> its concern that replacing postmasters with officers-in-charge who are
> subordinate to postmasters in larger communities would vitiate the
> community orientation of postal facilities.

36

Note 4.  Now the Postal Service has embarked on a new project.  It
has far reaching implications for rural America.  Congress does not
want indiscriminate closing of our rural and small town post offices.
The decision has also been made to create branches out of many post
offices close to large cities.  This would transfer a community oriented
post office into one administered through the institutions and directives
of large city postmasters with little or no community involvement.  This
plan will erode the identity so important to people who wish to maintain
a heritage of mutual interest.

Hearings on S. 2844 before the Senate Comm. on Post Office and Civil
Service, Part 4, 94th Cong., 2d Sess. 142 (1976).  *Cited in Wilson v.
United States Postal Service*, 441 F.Supp. 803, 806 (C.D. Cal. 1977).

*See* Docket No. 82-10, (Oceana Station, Virginia Beach, Virginia) at 8-9.

In the appeal concerning the Ecorse Classified Branch, Ecorse, Michigan,
the PRC dismissed the appeal for lack of jurisdiction.  The PRC explained that
"(i)n *Oceana Station*, *Virginia Beach, VA*, the Commission recognized a
jurisdictional exception to hearing appeals of post office closings under § 404(d)."
*See* Docket No. A2007-1, Order Dismissing Appeal on Jurisdictional Grounds,
October 9, 2007 (Ecorse Classified Branch) (included in Addendum of PRC
Orders at 10) at 5.  The PRC found that it did not have jurisdiction to consider the
Ecorse appeal because "the Postal Service's action with regard to the Ecorse
Classified Branch is part of a larger retail facility realignment plan serving the
community, as with the *Oceana* case."  Docket No. A2007-1 (Ecorse) at 7.

37

In the order concerning the East Elko, Nevada, appeal, the PRC explained that the Postal Service decided to close a station located 1.5 miles away from the main post office.  The PRC concluded that the East Elko Station customers were not losing access to the postal services offered in their community.  The Commission considered the close proximity of the Elko Main Post Office and the fact that the same services were available there to be a chief justification for closing the East Elko Station. *See* Docket No. A2010-3, Order Dismissing Appeal, June 22, 2010 (East Elko Station) (included in Addendum of PRC Orders at 17) at 7-8.

As the PRC admitted in the Ecorse Order, it had created its own jurisdictional exception to hearing appeals.  This exception was described in the Oceana appeal.  However, at the time the Oceana appeal was decided, there apparently were not any regulations about closings.  Thus, in creating its own jurisdictional exception by its own orders, such as in the Oceana appeal, the PRC acted in a manner that would rob itself of jurisdiction to hear appeals pursuant to 39 U.S.C. § 404(d)(5).

Then, after regulations about closings were adopted, the PRC apparently failed to acknowledge or rely upon those regulations in determining whether it has

38

jurisdiction to hear appeals.  In the Ecorse and East Elko orders, the PRC failed to cite to regulations for closings and relocations.  Instead, it continued to rely upon the jurisdictional exception it had described in Oceana.  This action by the PRC to limit and deny its own jurisdiction is arbitrary and capricious and not based on law and regulations.

In the Order Dismissing Appeal for the Pimmit Branch, JA 26, the PRC stated that:

> The Postal Service argues that Petitioner's appeal does not fall within the Commission's jurisdiction.  It offers two grounds for dismissal. First, the Postal Service argues that postal branches such as the Pimmit Branch are not "post offices" as that term is used in section 404(d). Second, it argues that patrons of the Pimmit Branch still have access to retain services in Petitioner's area of Northern Virginia, and the closing of the Pimmit Branch does not constitute a "closing" under Commission precedent, citing the Commission's order dismissing the appeal of the closing of the East Elko station in Elko, Nevada.

*See* Order Dismissing Appeal at 9.  JA 34.

However, the Postal Service only raised one argument about jurisdiction. The Postal Service renewed its argument that the PRC lacked jurisdiction to hear the appeal because it involved a branch.  In an alternative argument, the Postal Service asserted that "section 404(d) procedural requirements do not apply where postal customers do not lose access to postal services because of the location of

alternative retail facilities in 'close proximity' to the discontinued station."   In making this argument, the Postal Service relied upon the PRC's order in the East Elko appeal. The Postal Service did not assert that the PRC lacks jurisdiction in appeals where there are alternate retail facilities.   Instead, the Postal Service asserted that the "section 404(d) procedural requirements do not apply."   *See* Comments of United States Postal Service, November 21, 2011, Doc ID 77946, at 1-2.

As noted above, the jurisdictional rule created by the PRC concerning appeals in which the PRC asserts that there are alternate retail facilities in the community is not based on the law or pertinent regulations.  Similarly, there is no statutory basis for finding a lack of jurisdiction because the closing or discontinuance was part of a broader plan to rearrange the postal network. The jurisdictional rule created by the PRC cannot be used to deny postal facilities which are closed or discontinued the statutory right to appeal to the PRC.

The Postal Service and PRC seem to have abandoned the fundamental premise for the analysis of closings and relocations, which is providing postal services within the community.  Instead, the PRC has based its analysis primarily on the distances between postal facilities.  In the Order Dismissing Appeal at 11,

the PRC noted that "the new Falls Church facility at 800 West Broad Street is located 2 miles away from the Pimmit Branch."  JA 36.  The decisions about availability of postal services should not be based on the mileage between post offices.  The measure of miles fails to take into consideration the boundaries of a community, city or state.  A post office two miles away could be located in another state.

Further, in an urban area, the an analysis based on the distance in miles fails to consider transportation options and availability.  In the Northern Virginia region, there is increased emphasis on alternative methods of transportation, such as walking, bicycling and Metro.  Even if the distance between post offices is an appropriate measure of the availability of service, the need to walk, ride a bicycle or take a bus almost two miles to a post office makes that post office too inconvenient to provide adequate alternate service to the closed post office.

The Order Dismissing Appeal for the closing of the Pimmit Branch includes the following discussion:

> In this proceeding, the Postal Service entered into a long-term lease for the facilities at 800 West Broad Street with the expectation of closing the Pimmit Branch.  In *Oceana Station* and *Ecorse Branch*, the Postal Service built new facilities that replaced the facilities being closed.  In all three of these cases, the facility closures were part of a broader plan to rearrange postal networks.  …

41

> The closing of the Pimmit Branch was part of a rearrangement of retail facilities in the Falls Church, Virginia area.  The Commission has consistently held that the requirements of section 404(d) do not apply to such rearrangements.  Accordingly, this proceeding is dismissed.

Order Dismissing Appeal at 12, JA 37.

One problem with the plan as it affected the Pimmit Branch is that the Pimmit Branch was not located in Falls Church.  Even if the PRC has created an exception for rearrangement of retail facilities in a community, that exception does not apply to the Pimmit Branch.  The PRC erred in assuming that the Pimmit Branch was part of the Falls Church community.  Any rearrangement of retail facilities within the city of Falls Church should not include the Pimmit Branch, which was not in the city of Falls Church.  The postal customers of the Pimmit Branch should not have lost their post office because the Postal Service entered into an expensive lease at 800 West Broad Street in Falls Church, which is a different community.  The plan was unfair to the customers of the Pimmit Branch, because they lost their post office for reasons unrelated to the Pimmit Branch, but instead to help pay for the expensive Falls Church lease.  The Pimmit Branch was very profitable. It should not have been closed because the Postal Service committed to an expensive, long-term lease in the city of Falls Church.

42

The Order plainly reveals that the Postal Service had planned to leave the Pimmit Hills community without a postal facility.  The Postal Service entered into an expensive, long-term lease so it could move the retail operation in the city of Falls Church from 301 W. Broad Street to 800 W. Broad Street.  That move occurred on June 20, 2009.  The Postal Service simply ignored the needs of the postal customers in the Pimmit Hills community while committing itself to a long-term lease for a postal facility in Falls Church.  The PRC clearly erred in ignoring the needs of the Pimmit Hills community and finding that the Postal Service could close the Pimmit Hills Branch, because the Pimmit Hills postal facility is not part of the city of Falls Church postal facilities.

The Pimmit Branch was located in the Pimmit Hills community and not within the city limits of Falls Church.  *See* 39 CFR 241.2(a)(1) (branches are established outside the corporate limits or boundary of the city, town, or village in which the main post office is located).  Thus, the determination, pursuant to 39 U.S.C. § 404(d)(2)(A)(1), about the effect on the community should concern the community of Pimmit Hills, which is part of Fairfax County, and not the city of Falls Church.  *See* Final Determination, at page 4, JA 10, which states that the Pimmit Area is an unincorporated community located in Fairfax County.  The

43

community is administered politically by the Fairfax County Government. There are numerous religious institutions and businesses in the community. The Final Determination at page 5, JA 11, describes alternative locations for postal services as the Falls Church Finance Unit and the Dunn Loring Branch in Vienna, Virginia. There is no longer a postal facility in the Pimmit Hills community.

Further, upon information and belief, the main Falls Church post office at 301 W. Broad Street has been closed. However, the Postal Service asserted that information about the location of any main post office in Falls Church, Virginia, is not germane to the discontinuance of the Pimmit Branch. *See* Answer of United States Postal Service to request that the record be supplemented concerning the relocation of the main Falls Church post office, January 19, 2012, Doc ID 79807, at 4. The city of Falls Church has only the Finance Station located at 800 W. Broad Street. The carriers now deliver from Merrifield, Virginia, rather than from the now-closed Falls Church Main Post Office. Thus, the previous organization of the Falls Church postal facilities, which was anchored by the Falls Church Main Post Office at 301 W. Broad Street, no longer exists.

The PRC Order dismissing the Pimmit appeal is arbitrary, capricious and not in accordance with law because it relied upon its own orders, such as in the

44

Oceana, Ecorse and East Elko cases, to dismiss the appeal.   The PRC had created a jurisdictional exception through those orders that was not based on statute or regulation. Further, the PRC Order is arbitrary, capricious and not in accordance with law when it assumed that the Pimmit Branch was part of the Falls Church community and that the closing of the Pimmit Branch was part of a rearrangement of the retail facilities in the Falls Church, Virginia area.

## IV.   The PRC's order granting the motion to dismiss the appeal concerning the Venice, California, Post Office was arbitrary, capricious and not in accordance with law.

On September 23, 2011, the Vice President, Network Operations, sent the Postal Service's final decision upholding the relocation of the Venice, California, Main Post Office.  JA 55.  Petitions seeking review of the final decision to relocate the Venice Post Office were submitted to the PRC by Mark Ryavec, Venice Stakeholders Association, Lydia Matkovich, Jonathan Kaplan, Greta Cobar, Sue Kaplan, Jethro Parker, Bill Rosendahl, James Smith, and Free Venice Beachhead newspaper.  Order Granting Motion to Dismiss at 1, JA 75.  On January 24, 2012, the PRC issued an Order Granting Motion to Dismiss.  JA 75.

In the Order Granting Motion to Dismiss at 8-9, JA 82-83, the PRC concluded that:

45

(t)he closing of the Venice main post office is part of a relocation of the retail facility in Venice. The Commission has consistently held that the procedures set forth in section 404(d) do not apply to such a relocation. Accordingly, this proceeding is dismissed.

**A.     The PRC relied upon its orders, which are not based on any statute or regulation, in Oceana and similar cases to dismiss the appeal.**

As discussed in the PRC's conclusion cited above, the Postal Service is closing the Venice main post office. However, the PRC explained that this is "part of a relocation of the retail facility in Venice" and the "Commission has consistently held that the procedures set forth in section 404(d) do not apply to such a relocation." JA 82-83.

In dismissing the appeal, the PRC relied upon its previous orders in "Oceana and its progeny." JA 81. As explained in the discussion above about the Pimmit Branch, the PRC cannot take away its own jurisdiction through an order not based on statute or regulation. The fact that the PRC has continued to rely upon "Oceana and its progeny" does not make the Oceana order correct or grounded in law. The dismissal of the appeal based on Oceana and other PRC orders was arbitrary, capricious and not in accordance with law.

Further, the Postal Service action was in fact a plan to vacate the Venice Main Post Office because it represented a "Revenue Generation Opportunity." A

46

Postal Service document about the Venice Main Post Office titled "Actions & Costs" provides information about the planned action.   JA 47.   The Action is described as "Vacate Venice Main Post Office."   The document shows that the broker's opinion of value is $4,800,000.   A related document states that the Node Selection Criteria was "Revenue Generation Opportunity, Surplus Space."   JA 46.

The Postal Service closed the Venice Main Post Office so it could sell the historic building and generate revenue from that sale.   The Postal Service action was based on the plan to vacate the Venice Main Post Office, not to improve retail facilities in the Venice community.   The Postal Service was not taking action to benefit the postal customers, but to take advantage of a "revenue generation opportunity."

The PRC Order is arbitrary, capricious and not in accordance with law because it relied upon the PRC orders in Oceana and its progeny to dismiss the appeal.

**B.      The PRC Order failed to consider the commitment by the Postal Service and the pertinent regulations concerning the historic Venice Post Office and its mural.**

In dismissing the appeal, the PRC failed to consider the historic preservation issues concerning the Venice Post Office and its mural.

47

The Final Decision about the Venice Post Office includes this commitment,

JA 57, concerning the mural:

> The Postal Service will include measures to ensure the mural will remain available for public viewing in any plan for reuse or disposal of the Post Office property.

Also, there are regulations concerning the procedures when historic

preservation issues are involved.  39 C.F.R .§ 241.4 provides in part:

> (d) *Discontinuance of post offices; historic preservation*. (1)  It is the policy of the Postal Service, by virtue of Board of Governors Resolution No. 82-7, to comply with Section 106 of the general provisions of the National Historic Preservation Act, 16 U.S.C. 470, *et seq*., Executive Order 12072, and Executive Order 13006.  Therefore, any facility project that will have an effect on cultural resources will be undertaken in accordance with that policy.
>
>  (2)  Any action involving the closing or other discontinuance of a post office shall be undertaken only in accordance with 39 U.S.C. 404(b) and 39 CFR 243.1.  In the event a facility action is subject to both this section and either the NHPA or the post office discontinuance requirements, all comment periods and other public participation matters shall be governed by those statutes.

The PRC failed to consider the commitment by the Postal Service that the

mural will remain available for public viewing.  In addition, the PRC did not

address the historic preservation issues concerning the Venice Post Office and the

mural.

The Postal Service has previously faced issues involving historic murals.  In

Beaufort, North Carolina, the town purchased the old post office building to use as a new town hall. The Postal Service agreed to a 25-year free loan of four New Deal-era murals when the town purchased the property. In return, the town agreed to maintain the historical aspects of the lobby. *See* Ben Hogwood, *Post office gets renovated*, Carteret County News-Times, November 27, 2011 (available at http://www.carolinacoastonline.com/news_times/news/article_4634ecea-f6cf-5243-ae64-cc5f483c9ebb.html).

Murals owned by the Postal Service should be available for public viewing. If historical murals are kept in a private building and used to benefit the owner of the building or the business located in the building, the value of the murals to the public is greatly reduced. If access to a mural is restricted and is determined by the owner of the building in which the mural is located, the Postal Service will have in effect transferred control of the mural to the private owner. Further, the private owner will benefit by having the mural in its building presumably without having paid for that benefit in the purchase price of the building. The Postal Service should be required to keep its commitment to maintain public access to the Biberman mural.

The PRC Order was arbitrary, capricious and not in accordance with law

49

because of its failure to address the Postal Service commitment about the mural and the historic preservation issues concerning the Venice Post Office and the mural.

**V.    The PRC's order, which affirmed by a 2-2 tie vote the Final Determination to  close the Spring Dale, West Virginia, Post Office, was arbitrary, capricious and not in accordance with law.**

On October 21, 2011, the Postal Service posted the Final Determination to Close the Spring Dale, WV Post Office and Extend Service by Highway Contract Route Service.  JA 88.  Petitions seeking review of the Final Determination were submitted to the PRC by Paul McClung, Angie Brown, Gary Walker, Betty Puckett, Melissa Porter, and Arlene Ingram.   On February 27, 2012, the PRC issued an Order Affirming Determination of the Final Determination to close the Spring Dale, West Virginia, Post Office.  JA 114.

In the Order Affirming Determination at 2, the PRC stated that "(t)he Final Determination to close the Spring Dale post office is affirmed."  This statement was followed by footnote 4, which explained that "(t)he Commission is divided equally, 2-2, on the outcome of this appeal.  In the absence of a majority, the Final Determination stands."  JA 115.

50

In the conclusion, the Order at 15 stated that "the Postal Service's determination to close the Spring Dale post office is affirmed." This statement was followed by a footnote which referred to footnote 4 about the 2-2 vote. JA 128.

When the PRC was considering numerous appeals before the end of the initiative to close post offices, there were quite a few of the appeals decided by a tie vote. However, some of the orders did not note or comment on the existence of a tie vote. *See,* e.g.*,* Docket No. A2012-8, Order Affirming Determination, January 25, 2012 (Rhodell, West Virginia) (included in Addendum of PRC Orders at 25) at 2. In the Rhodell appeal, the Order stated that "(t)he Final Determination to close the Rhodell post office is affirmed," but there was no footnote about the tie vote. In light of the numerous orders that had been decided with tie votes, the PRC began using a footnote similar to the one in the Spring Dale, West Virginia, appeal. The footnote indicated that the Final Determination would stand when there is a tie vote.

The PRC appears to have no statutes, regulations or rules for what constitutes a quorum or for the effect of tie votes. For a period of time, the PRC had four commissioners with one vacancy, which left open the possibility of tie

votes.  It is also possible to have a tie vote if there are five commissioners, but one is recused.

By considering the tie vote to be an affirmance, the PRC presumably was following the practice of courts of appeals concerning tie votes.  However, the PRC is not a court of appeals.  Moreover, if courts affirm on a tie vote, they typically do not issue an opinion showing the views of the various judges.  Instead, there is a simple statement that the judgment is affirmed for the reasons stated below.

By contrast, in this case, there were four PRC Commissioners and three opinions.  JA 114, 130, 134.  The result was an order containing three separate views about the final determination of the Postal Service to close the Spring Dale Post Office.  This order cannot be considered an affirmance.  There is no basis for the PRC assumption that the two votes in favor of affirming the final determination should be given more weight than the two votes in favor of remanding the final determination.

In what was described as a dissenting opinion, JA 130, PRC Chairman Ruth Y. Goldway explained that:

> (p)etitioners have in this instance described and identified a number of procedural issues and possible defects in the notice and comment process. …

There were also significant local customer concerns that the Postal Service did not appear to address in the Administrative Record.  …
The community meeting arranged by the Postal Service was a well-attended standing room only event demonstrating strong community interest in the post office and the potential continuing demand for postal services.

In another opinion described as a dissenting opinion, JA 134, PRC Vice Chairman Nancy E. Langley stated that:

(t)he Postal Service did not adequately consider the economic savings as required by 39 U.S.C. § 404(d)(2)(A)(iv).  …
The Postal Service also did not adequately consider the effects on the community and whether the closing is consistent with the Postal Service's provision of 'a maximum    degree of effective and regular postal services to rural areas, communities,  and small towns where post offices are not self-sustaining' as required by 39 U.S.C. § 404(d)(2)(A)(i) and 404(d)(2)(A)(iii). …
I find that the Administrative Record evidence does not support the Postal Service's decision to discontinue operations at the Spring Dale post office and should be remanded.

The effects of a tie vote present unresolved issues.  *See* Marshall J. Breger and Gary J. Edles, *Established by Practice: The Theory and Operation of Independent Federal Agencies*, 52:4 Administrative Law Review 1111, 1185 (2000) (whether a tie vote constitutes agency action depends on the agency's statutes and regulations, which vary among agencies).  The PRC did not cite any statutes, regulations or rules when it treated the tie vote as an affirmance.

Instead, the PRC just adopted an expedient method to deal with  the tie votes

53

after the issue of tie votes had become a problem.  The four commissioners were splitting the vote in numerous appeals with a 2-2 vote.  The PRC did not have any rule or precedent concerning tie votes to rely upon.  By finding that a tie vote was an affirmance, the PRC could issue orders, even though there was no consensus or majority concerning whether a final determination to close should be affirmed or remanded.  The decision by the PRC to treat tie votes as an affirmance is arbitrary, capricious and not in accordance with law.

The difficulties with tie votes have been noted in the Federal Election Commission ("FEC").  It has been explained that "(f)rustration with the FEC stems largely from its structure.  The six-member commission is evenly divided along partisan lines, which means nothing can get done unless one member is willing to cross party lines and go along with a change."  *See* Jonathan D. Salant, *U.S. Federal Election Commission Deadlocks on Greater '12 Donor Disclosure*, Bloomberg, June 15, 2011 (available at http://www.bloomberg.com/news/2011-06-15/u-s-federal-election-panel-considers-increased-donor-disclosure-for-2012.html). The experience at the Federal Election Commission indicates that it is advisable for commissions to have a policy or rule for considering tie votes.

Finally, the status of the Spring Dale Post Office remains uncertain.  On

54

December 6, 2012, there was a community meeting at Spring Dale on the new Postal Service plan to reduce hours, rather than to close post offices.

However, even though the Postal Service has abandoned the plan to close post offices, the final determinations issued by the Postal Service to close post offices apparently remain in force. It does not appear that those final determinations, including the one for the Spring Dale, West Virginia, Post Office, have been revoked or rescinded. Further, it is not known whether there is a time limit for the final determinations. Thus, the Postal Service presumably could again rely upon the existing final determinations to close post offices, including the Spring Dale Post Office, without complying with the procedures to close post offices in a time period near the date for the proposed closing.

Moreover, the Postal Service could simply make a few simple changes to the existing final determinations and then close the post offices. As a result, even though the Postal Service has discarded its plan to close post offices, the rural post offices, such as the one in Spring Dale, West Virginia, still face the possibility of closing and the near certainty of reduced hours.

The PRC order was arbitrary, capricious and not in accordance with law because it affirmed the Final Determination of the Postal Service to close the Spring Dale, West Virginia, Post Office by a 2-2 tie vote.

55

## CONCLUSION

Wherefore, for the foregoing reasons, petitioners respectfully request that these petitions be granted and that these matters be remanded to the Postal Regulatory Commission for further consideration.

Respectfully submitted,

/s/ Elaine J. Mittleman
Elaine J. Mittleman
Law Office of Elaine J. Mittleman
2040 Arch Drive
Falls Church, VA  22043
(703) 734-0482
elainemittleman@msn.com

56

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)

Pursuant to Fed. R. App. P. 32(a)(7), I certify that the attached brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B). The brief contains 12,821 words.

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally-spaced typeface using 14-point Word Times New Roman typeface.

/s/ Elaine J. Mittleman
Elaine J. Mittleman, Esq.
elainemittleman@msn.com


## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the Appellate CM/ECF system on December 19, 2012. Participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

Respectfully submitted,

/s/ Elaine J. Mittleman
Elaine J. Mittleman, Esq.
elainemittleman@msn.com

57